HILL *v.* MAYOR, ETC., OF CITY OF NEW YORK.

(*Supreme Court, General Term, First Department.* March 31, 1892.)

1. WHARVES—USE AS DUMPING GROUND.

Laws 1875, c. 249, § 3, prohibits the use of piers of New York city, theretofore used by vessels engaged in foreign commerce, etc., as a dumping ground. Laws 1881, c. 367, § 4, authorizes the designation of piers for the use of the commissioners of street cleaning, and section 12 repeals all acts and parts of acts inconsistent therewith. The consolidation act, (Laws 1882, c. 410,) §§ 706, 728, substantially re-enacted the latter act, and section 773 re-enacted Laws 1879, c. 249, § 3, in a modified form, and prohibited the same use, "except as in this act otherwise provided." *Held,* that the provisions of the consolidation act permitted the taking of designated piers by the department of street cleaning for dumping purposes, although such use was prohibited by the act of 1875.

**2. SAME,—CONSTRUCTION OF STATUTE.**

The words "heretofore been used," in Laws 1875, c. 249, as amended by Laws 1883, c. 435, and in the consolidation act, (Laws 1882, c. 410,) § 773, as amended by Laws 1889, c. 509, providing that no pier of the city of New York which has "heretofore been used" for the loading, etc., of vessels engaged in foreign commerce, shall be used as a dumping ground, do not apply to a pier which was used as a dumping ground prior to the amendments.

**3. SAME—DESIGNATION OF PIERS.**

The designation of the east portion of pier 12, East river, of the city of New York, for the use of the street cleaning department of said city as a dumping ground, is not the prevention of the free use of such pier within the meaning of the consolidation act, (Laws 1882, c. 410,) §§ 786–788, providing that the west half of said pier shall continue to be set apart for the use of certain vessels, which on April 15, 1857, occupied berths on such side, in the absence of proof that the west side of such pier was exclusively used or required for the use of the vessels in question.

**4. NUISANCE—IRREPARABLE INJURY—INJUNCTION.**

The court will not restrain the necessary use, by the street cleaning department of New York city, of a pier of the said city, as a dumping ground, unless the plaintiff shows that he will sustain special and irreparable damages, which cannot be compensated by an ordinary action at law.

15 N. Y. Supp. 393, affirmed.

Appeal from special term, New York county.

Action by William Hill against the mayor, aldermen, and commonalty of the city of New York to restrain the use of a pier as a dumping ground. Judgment for defendants. Plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*Shearman & Sterling*, (*Thomas G. Shearman* and *John A. Garver*, of counsel,) for appellant. *William H. Clark*, Corp. Counsel, (*Edward H. Hawke, Jr.*, and *Charles A. O'Neil*, of counsel,) for respondents.

O'BRIEN, J. The action is brought to compel the removal of a dumping board erected on the east side of pier 12, on the East river, and to restrain the city from permitting the board to be used for dumping purposes, on the ground that the existence of such dumping board is a public nuisance, which causes special injury to the plaintiff. The grounds upon which the learned trial judge dismissed the complaint upon the merits are fully given in the findings and opinion. 15 N. Y. Supp. 393. As we agree in the conclusion reached, it is only necessary to briefly supplement what has been so well and fully stated by the trial judge. The main proposition of the appellant is that, such use of a dumping board being a public nuisance, from which special injury results to the plaintiff, it is only where express legislative authority is given for its maintenance that it can be justified. We do not dissent from this view of the law, but, applying the same to the case as presented, reference being had to the several acts which bear upon the subject, we think that therein is to be found express authority for the use and maintenance on the half of the pier in question of such dumping board. The act of 1875 (chapter 249, § 3) in express terms prevented the use as a dumping ground of any wharf, pier, or slip in the navigable waters of the East river as heretofore used for the loading and discharging of sailing vessels, regularly employed in foreign commerce. It having been made to appear that pier 12 had been so used by sailing vessels, this act prohibited its use as a dumping ground. The Laws of 1881, c. 367, by its fourth section expressly authorized the use of slips, piers, and berths in slips for the use of the street cleaning department, "excepting slips, docks, and piers on the East river, set apart for the use of canal-boats." By the twelfth section of this act of 1881 "all other acts and parts of acts inconsistent herewith" were repealed. It is insisted by the respondents that the repealing clause in the act of 1881 resulted in the repeal of so much of the act of 1875 as exempted this pier from use as a dumping ground. Were this a material question in the case, we should be inclined to hold that it had no such force and effect, for the reason that there is no such

inconsistency between the two acts as would require for the carrying out of the act of 1881 that the act of 1875 should be considered as repealed thereby. As intimated, however, this is neither material nor essential to the disposition of this case, for, though it might be urged that, at the time when the pier was appropriated to the purposes of a dumping ground, no express authority existed, and therefore that the original designation of the pier and the use thereof as a dumping ground was unauthorized, yet it will be found upon an examination of the subsequent legislation that such use was legalized. This dumping ground was established in 1881. Subsequent thereto all the laws, local and special, relating to the city of New York, were consolidated into one act, known as chapter 410 of the Laws of 1882. Sections 706 and 728 of said act are substantial re-enactments of the Laws of 1881, which permitted the use of wharves, piers, and slips as a dumping ground, excepting such as were exempt by other special provisions of law. The act of 1875 was also included in the consolidation act, and re-enacted as section 773, but with a very important and significant modification. It was therein provided (section 773) as follows: "It shall not be lawful to interfere with the free public use as now enjoyed, or except as in this act otherwise specially provided, to permit the use as a dumping ground of any wharf, pier, slip, or bulk-head adjacent thereto * * * which has heretofore been used for the loading and discharging of the sailing vessels," etc. It will thus be seen that, the legislature having in mind the two provisions, (sections 706 and 728,) which permitted the use of wharves, piers, or slips as a dumping ground, excepting slips, docks, and piers on the East river, set apart for the use of canal-boats, the literal re-enactment of the act of 1875 would have created another exception in favor of piers, wharves, or slips which had heretofore been used for the loading and discharging of sailing vessels. By the language added to the law of 1875, as re-enacted in section 773 of the consolidation act, viz., "or except as in this act specially provided," we have a clear, legislative declaration that the prohibition which exists against the use as a dumping ground of piers, wharves, or slips used for the loading and discharging of sailing vessels should not take away the right to permit the use of such piers for that purpose, for the reason that such permission and use was otherwise specially provided by the preceding sections, 706 and 728. In our judgment, therefore, the effect of the re-enactment of all these laws in the consolidation act was to permit the use of the west side of pier 12 as a dumping ground. While, therefore, the original creation of a dumping ground on the pier may not have been authorized, its use, after the passage of the consolidation act, was thus legalized, and it was thereafter proper to designate such pier for such purposes.

By chapter 435 of the Laws of 1883, chapter 249 of the Laws of 1875 was amended as follows: "It shall not be lawful to interfere with the free public use as now enjoyed, or to permit the use as a dumping ground, of any wharf, pier, slip, or bulk-head adjacent thereto in the navigable waters of the East river, of the city of New York, which has heretofore been used for the loading and discharging of sailing vessels, regularly employed in foreign commerce." By chapter 509 of the Laws of 1889, section 773 of the consolidation act, which has already been referred to, was amended as follows: "It shall not be lawful to permit the use as a dumping ground of any wharf, pier, slip, or bulk-head adjacent thereto, in the navigable waters of the East river, in the city of New York, which has heretofore been used for the loading and discharging of sailing vessels, regularly employed in free commerce," etc. While no doubt may exist as to what would have been the effect of the Laws of 1883 and 1889 if such laws were in existence when the dumping ground was created in 1881, the application and effect of such laws must be determined with reference to the use which had been made of the west side of pier 12 since 1881. It will be noticed that in those laws (1883 and 1889) the pro-

hibition is restricted to such a wharf, pier, or slip "which has heretofore been used for the loading and discharging of sailing vessels," etc.    The question, therefore, remains as to the construction to be given to these words, "heretofore used."    As to the true meaning to be applied to these words, we are not permitted to speculate in view of the decision of the court of appeals, which has expressly passed upon the meaning of this language.    In the case of *People* v. *Baltimore & O. R. Co.*, in 117 N. Y. 150, 22 N. E. Rep. 1026, Judge GRAY, at page 158, 117 N. Y., and page 1028, 22 N. E. Rep., uses the following language: "The words, 'heretofore been used,' in the amendatory section of the act of 1883, should be taken in their usual and ordinary sense and signification.    Whenever the legislature has expressed its will in words having a common acceptation, and a plain, as contradistinguished from a technical, meaning, we must read them as they would be supposed to be used and understood generally.    So read, 'heretofore' would, to the ordinary mind, convey the idea of 'before this time,'—that is to say, 'hitherto,' 'down to this time,' and not at all the idea of comprehending any remote time in this or the last century.    The construction which must convey the true intent of this legislative act is that piers which have been in common and continuous use by sailing vessels engaged in foreign commerce, of a draught of more than eighteen feet, shall continue open to that use.    The manifest object of making such a reservation was to prevent piers then in such use, and hence, presumably, much needed by the public, from being exclusively used by private persons or corporations."    The pier having, therefore, at the time been used as a dumping ground, and not by sailing vessels engaged in free or foreign commerce, the prohibition in the acts of 1883 and 1889 does not apply.    Our attention has also been called to sections 786–788 of the consolidation act, which designates the manner in which the west side of pier 12 should be used.    It is provided in section 786 that, together with other piers, the west side of pier 12 shall continue to be set apart for the use and accommodation of the regular packet lines of sailing vessels, propellers, and barges, which on April 13, 1857, occupied berths on such other piers, and on the west side of pier 12, and running to and from Boston, to the other places in such section mentioned.    No evidence, however, was offered upon the trial to show that any such regular packet lines which occupied berths on such pier in 1857 so occupied them down to 1881, or that they, after 1857, and down to the time that the pier was designated as a dumping ground, continued to run to Boston and the other places mentioned in that act.    By section 788 it is provided that nothing in section 786 shall be construed to prevent the use of the waters and wharves when such waters and wharves are not required for the use and accommodation of the vessels, boats, and barges described in such section. There being in the case no evidence that the west side of the pier 12 was exclusively used or required for the use of the vessels for which the pier was to be set aside, we are forced by the direction in the act not to construe such designation as preventing the free use of such pier.    Upon an examination, therefore, of all the grounds relied upon, we do not think that any error was committed which requires that this judgment should be reversed, and it is accordingly affirmed, with costs.    All concur.