LEVI P. MORTON, APPELLANT, v. THE MAYOR, ALDER-MEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENT.

*Nuisance — caused by the erection of a pumping station by a city — a defense that the act was permitted by statute—the rule as to such a defense — liability of a city for a nuisance.*

The legislature, by chapter 386 of the Laws of 1878, empowered the commissioner of public works of the city of New York, when authorized by a three-fourths vote of all the members of its common council, to expend moneys in laying pipes to extend the distribution of Croton water, and in laying mains and in erecting or constructing such structures and fixtures as the commissioner might deem necessary to deliver said water at higher levels.

Under authority of the common council there was erected, adjacent to certain houses belonging to Levi P. Morton, a pumping station containing machinery, the jarring of which caused special injury to the houses, and diminished their rental value

In an action brought by Morton to abate the nuisance, and for the recovery of the damages sustained by him:

*Held*, that the action was maintainable.

That, in order to establish a sanction by statute, as a defense to the maintenance of what would otherwise be a nuisance, it must appear expressly or by clear implication that the legislature contemplated the doing of the very act which occasioned the injury.

That, from the fact that the statute authorized the commissioner to lay mains, and to erect such structures as might be necessary to deliver water at higher levels, no inference could be drawn that the legislature intended to grant immunity to the corporation to erect a structure which was conceded to be a nuisance to the adjoining owner.

That a municipal corporation was liable for creating or maintaining a nuisance to the same extent as an individual.

APPEAL by the plaintiff Levi P. Morton from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 21st day of October, 1891, dismissing

the complaint, with costs, after a trial at the New York Circuit before the court and a jury.

*Albert Boardman,* for the appellant.

*C. Blandy* and *E. J. Freedman,* for the respondent.

VAN BRUNT, P. J.:

The plaintiff is the owner of three private dwelling-houses situated on the southerly side of West Ninety-eighth street; and immediately adjoining one of these houses, on the east thereof, is the Croton water high service pumping station, used in connection with the supply and distribution of Croton water at greater heights than can be obtained by the ordinary pressure of said water.

The complaint alleges that the maintenance of said pumping station by the defendant, adjacent and so near to the premises of the plaintiff, and the constant operation of the pumps and machinery, produces a continual jarring of the plaintiff's houses, to their peril and injury, and also a great and incessant noise, all of which seriously damages the plaintiff's property and houses, very greatly diminishing the selling and renting value thereof, and that the operation thereof constituted, and is, a nuisance to the plaintiff, whereby he has sustained damage to a large amount and claimed judgment therefor.

The defendant admits the maintenance of the structure, but denied liability for consequential damages. Evidence having been given upon the trial tending to support the allegations of the complaint, the same was dismissed, and from the judgment thereupon entered this appeal is taken.

It is not disputed by the defendant upon this argument that the facts proven by the plaintiff, in case the defendant had been a private individual, instead of a municipal corporation operating the pumping station under the sanction of law for public purposes, would be a nuisance; and it is also conceded that the plaintiff has suffered pecuniary damages, special to himself, as distinguished from the general public. But it is urged that the pumping station in question being erected and maintained under the direct authority and sanction of the legislature, the defendant is not responsible for the consequential damages.

In the consideration of the questions brought up by this appeal it is not necessary to enter into a disquisition as to whether the legislature may, by any legislative enactment, allow a municipal corporation to use its property in such a manner as to destroy the utility of the property in its neighborhood, because no such question seems to be involved in the case at bar. The rule is well settled that in order that exemption can be claimed from the consequences of the use of property by a corporation, it must appear that the legislature contemplated the doing of the very act which occasioned the injury. The case of *Cogswell* v. *New York, New Haven and Hartford Railroad Company* (103 N. Y., 10) lays down distinctly this principle. In the case cited the court say : " The statutory sanction which will justify an injury to private property, must be express, or must be given by clear and unquestionable implication from powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury. This is but an application of the reasonable rule that statutes in derogation of private rights, or which may result in imposing burdens upon private property, must be strictly construed. For it cannot be presumed, from a general grant of authority, that the legislature intended to authorize acts to the injury of third persons, where no compensation is provided, except upon condition of obtaining their consent." And this brings us to the consideration of the question as to whether the defendant has brought itself within the rule above set forth.

Chapter 386 of the Laws of 1878 empowered the commissioner of public works, when authorized by a three-fourths vote of all the members elected to the common council of the city, etc., to expend certain sums of money in laying pipes to extend and enlarge the distribution of Croton water throughout the city, etc., and in laying mains and erecting or constructing such structures and fixtures as the commissioner might deem necessary to deliver said water at higher levels.

The commissioner of public works having requested authority to erect a suitable building, with two pumping engines and fixtures, including a tank, etc., on the lots between Ninety-seventh and Ninety-eighth streets, formerly occupied by the aqueduct, on the 3d of December, 1878, the board of aldermen passed a resolution

authorizing such construction, which resolution was duly approved by the mayor, and thereupon such pumping station was built with the results which have been above described. The question presented is whether the legislature expressly authorized the doing of the very thing which resulted in the injury.

It is claimed, upon the part of the respondents, that the case of *Atwater* v. *The Trustees of the Village of Canandaigua* (124 N. Y., 602) is an authority in support of this proposition. But it seems to us that an examination of that case shows that it is not applicable to the one at bar. In that case, by virtue of certain powers, the trustees of the village, as commissioners of highways, were authorized to construct the identical and particular structure at the identical and particular place by the legislature; and the coffer-dam, which was the cause of the damage to the plaintiff, was a necessary incident to that structure. The court say that the necessity for it made it lawful; and it seems to be expressly recognized in that case that if the injury was permanent a different rule might apply, but it being only temporary the necessity and the direct legislative authority were held to absolve the commissioners. It may further be remarked, in passing, that that action was an action for negligence and nothing else. It was not an action for damages because of the maintenance of a nuisance.

It is well settled that a private individual must use his own property in such manner as not to injure the property of his neighbor; and the same rule has been applied to the corporation of the city of New York, it having been held that it has no greater right to maintain a nuisance on its land than a private person possesses. (*Brower* v. *Mayor*, 3 Barb., 257; *Griffin* v. *Mayor*, 9 N. Y., 456.) And in the case of *Noonan* v. *City of Albany* (79 N. Y., 476), it is expressly held that a municipal corporation has no immunity from legal responsibility for creating or maintaining a nuisance.

It seems to us it would be a great stretch of language to hold that because the legislature authorized the laying of mains and the erection of such structures and fixtures as the commissioner might deem necessary to deliver water at higher levels, that he, therefore, had a right to maintain any nuisance in any part of the city of New York which he might deem necessary, and the common council might approve of, to the absolute destruction of adjoining property.

We can find no principle upon which it can be claimed that simply because a public service is being performed a man's house can be shaken down about his ears and the use of his property absolutely destroyed. If the defendant's claim is correct, then such a principle must prevail. It is undoubtedly true that the courts have gone a great way in making private rights subservient to public interests where there has been express legislative authority for doing the very act which has occasioned the injury to such private rights; and there has been in many instances, under a fiction of law, absolute destruction of private property without compensation. But when such results ensue there must be no ambiguity about the legislative authority; and we search in vain for any legislation from which it appears that the legislature contemplated any such results as are shown to have arisen from the operation of the pumping stations erected by the defendant. And it is not to be presumed that the legislature would authorize an invasion of private rights, such as has been established by the evidence in this case, without providing for compensation. It is evident from the nature of the work that the nuisance is not temporary, but permanent, and that the plaintiff is permanently deprived of the beneficial enjoyment of his property. Under these circumstances, we do not see how the city can escape liability therefor.

The judgment should be reversed and new trial ordered, with costs to appellant to abide the event.

O'BRIEN and PATTERSON, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.